NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>Pacific</u> <u>Reporter</u>.  *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska  99501*
*Fax:  (907) 264-0878*
*E-mail:  corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| STATE OF ALASKA,<br><br>Appellant,<br><br>v.<br><br>SHANE KIDD BOROWSKI,<br><br>Appellee. | Court of Appeals No. A-11688<br>Trial Court No. 3AN-13-3567 CR<br><br>O P I N I O N<br><br>No. 2510 — July 22, 2016 |

Appeal from the District Court, Third Judicial District, Anchorage, Pamela Scott Washington, Judge.

Appearances:  Jason B. Frasco, Assistant District Attorney, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Appellant.  Catherine Boruff, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellee.

Before:  Mannheimer, Chief Judge, and Allard, Judge.

Judge MANNHEIMER.

During Anchorage Assemblyman Dick Traini's run for re-election in 2013, Shane Kidd Borowski posted a message on Traini's election Facebook page.  The message read, "Your going to get assassinated."  [*sic*]

Based on this conduct, Borowski was charged with the crime of second-degree harassment as defined in AS 11.61.120(a)(4).  This statute prohibits a person

from making "[an] electronic communication that threatens physical injury", if the person makes that communication "with intent to harass or annoy another person".

The district court dismissed this charge before trial, ruling that Borowski's Facebook post was protected speech under the First Amendment.

We conclude that the district court's ruling was mistaken in two respects.

First, in making this ruling, the district court improperly made several findings of fact — even though, as yet, no evidence has been presented in Borowski's case. And in each of these findings, the court interpreted the circumstances in the light most favorable to Borowski.

Second, the district court's ruling was based on the mistaken legal premise that Borowski could not be prosecuted for his Facebook post unless Borowski seriously intended to harm Traini. As we explain in this opinion, the law is to the contrary: a person can be prosecuted for communicating a threat of harm to another person even if the speaker does not seriously intend to carry out the threat, so long as the speaker is aware that people would reasonably interpret the words as a real threat of harm.

For these reasons, we reverse the district court's ruling and reinstate the charge against Borowski.

*Procedural history of this case, and details of the district court's ruling*

After Borowski was charged with second-degree harassment for his Facebook post, Borowski's attorney moved to dismiss this charge, arguing that Borowski could not be prosecuted because his Facebook post was protected speech under the First Amendment to the federal constitution. The defense attorney argued that Borowski's communication was merely political hyperbole, and not a "true threat".

The district court granted Borowski's motion to dismiss. The court took the position that, under the First Amendment, (1) a person can be criminally prosecuted for their speech only if that speech constitutes a "true threat", and (2) a person's speech constitutes a "true threat" only if "the [person] means to communicate a serious expression of [their] intent to commit an act of unlawful violence to a particular individual or group".

The court then proceeded to make several findings of fact — not based on any evidence, but solely on the parties' pleadings.

First, the district court concluded that Borowski's Facebook post did not constitute a serious expression of Borowski's intent to commit an act of unlawful violence, because (according to the court) Borowski's words "conveyed no explicit or implicit threat ... that *he himself* would assassinate Traini." (Emphasis added.)

On this point, the court noted that there was no evidence that Borowski possessed weapons that might be used to assassinate Traini — a circumstance which, according to the district court, bolstered the court's conclusion that Borowski had not "meant to communicate a serious expression of an intent to commit an act of violence against Traini."

Next, the district court found that Borowski's post on Traini's election Facebook page did not constitute a direct communication to Traini personally, but rather a "[political] statement ... to [the] public." The court concluded that "[Borowski's] choice of venue [for his speech] does not indicate [an] intent to personally threaten Traini[,] nor does it indicate [that Borowski] had the sole intent to harass or annoy."

Finally, the district court noted that when Borowski was confronted about his Facebook post, he repeatedly declared that he did not intend to seriously threaten Traini. The court acknowledged that "many defendants will claim innocence", but the

court declared that "Borowski's repeated statements that he was just joking ... cannot be discounted entirely."

Having made these findings in favor of Borowski (*i.e.*, after interpreting the situation in Borowski's favor on these various points), the district court then paradoxically declared that even "[viewing] the facts in the light most favorable to the prosecution", there was no reasonable interpretation of the situation that would support the conclusion that Borowski's Facebook post was a "true threat" — *i.e.*, no reasonable possibility that Borowski truly intended to threaten Traini with death. The district court therefore dismissed the harassment charge.

### *Why we reverse the district court's ruling*

Because Borowski's motion to dismiss was filed in advance of trial (and in advance of any evidentiary hearing), the district court had not heard any testimony when the court made its ruling. Borowski's motion was, in essence, a motion for judgement on the pleadings, or (conceivably) a motion for summary judgement — *i.e.*, a claim that even if the State proved everything alleged in its criminal complaint and supporting documents, any and all reasonable fact-finders would have to conclude that Borowski's Facebook post was protected speech.

In such circumstances, a court is not supposed to make findings of fact. Instead, the court must view the facts in the light most favorable to the non-moving party — the party who will lose if the motion is granted. In other words, when the court evaluates whether the case should be dismissed, rather than making findings of fact, the court must simply *assume* that the non-moving party will prove all of its factual

allegations if the case goes to trial, and that the jurors (having heard this proof) will draw all reasonable inferences in favor of the non-moving party. [1]

In Borowski's case, in the concluding paragraph of the district court's decision, the court declared that it was viewing the facts "in the light most favorable to the prosecution". But it is obvious from the court's analysis that the court failed to follow this rule. Instead, the court repeatedly interpreted the facts in the light most favorable to Borowski. For example, with regard to Borowski's repeated statements that his Facebook post was merely a joke, the district court declared that Borowski's protestations of innocence "[could not] be discounted entirely". But, of course, if Borowski's case went to trial, the jury would be entitled to do just that.

The district court's ruling was flawed in one other respect: the court applied the wrong law when it concluded that Borowski's Facebook post was protected speech under the First Amendment.

The district court concluded that, under the First Amendment, words that communicate a threat of physical harm are protected from criminal prosecution unless the State proves that the speaker "[meant] to communicate a serious expression of [their] intent to commit an act of unlawful violence to a particular individual or group". At several points in its analysis, the district court either expressly or impliedly declared that the State was required to prove that Borowski truly intended to inflict harm on Traini.

This is incorrect. As many courts have held, the government need not prove that it was the speaker's subjective intent to carry out the threat. Rather, it is

---

[1] *See, e.g.*, *Brandner v. Pease*, 361 P.3d 915, 920 (Alaska 2015).

sufficient if the speaker utters or transmits a communication with knowledge that the communication *will be viewed* as a threat. [2]

The district court's erroneous ruling on this issue may have stemmed from the problematic language that the courts have used to describe this concept — "true threat". This phrase is ambiguous: as the district court's decision in Borowski's case illustrates, the words "true threat" could easily be misunderstood to mean that the speaker truly intended to carry out the threatened conduct. But that is not the case.

For years, the Alaska statutes have penalized threatening communications even without proof that the speaker actually intended to carry out the threat. For example, it is a crime under AS 11.56.810(a)(1) for a person to *falsely* report that a bomb has been planted in a building or in a public area.

In *Commonwealth v. Beasley*, __ A.3d __, 2016 WL 1719408 (Pa. 2016), the Pennsylvania Supreme Court was recently called upon to interpret that state's "terroristic threatening" statute [3] — a counterpart to our AS 11.56.810. The court explained that the government was required to prove that "the defendant made a threat to commit a crime of violence", and that the defendant communicated this threat "with the intent to terrorize another or with reckless disregard for the risk of causing terror." But, as the Pennsylvania court explained, "[n]either the ability to carry out the threat, nor a belief by the person threatened that the threat will be carried out, is an element of the offense. ... Rather, the harm sought to be prevented by the statute is the psychological distress that follows from an invasion of another's sense of personal security." [4]

---

[2]   *See Virginia v. Black*, 538 U.S. 343, 358-360; 123 S.Ct. 1536, 1547-48; 155 L.Ed.2d 535 (2003); *State v. Moulton*, 78 A.3d 55, 64-65 (Conn. 2013); *State v. Kilburn*, 84 P.3d 1215, 1219-1222 (Wash. 2004) (and the cases cited there).

[3]   18 Penn. Compiled Stats. § 2706.

[4]   *Beasley*, __ A.3d __, 2016 WL 1719408 at *5.

Our harassment statute, AS 11.61.120(a)(4), is aimed at a similar societal interest. Under this statute, a person commits the crime of second-degree harassment "if, with intent to harass or annoy another person, [the] person ... makes ... a telephone call or electronic communication that threatens physical injury or sexual contact". This statute does not penalize the intent to inflict physical injury or non-consensual sexual contact. Rather, it penalizes the act of communicating with another person in a way that the speaker knows *will be understood as a threat* to inflict these harms, if the speaker's intent in making this communication is to harass or annoy another person.

Here, the government's case against Borowski would be established if the government proved (1) that Borowski knowingly made an electronic communication, (2) that this electronic communication threatened physical injury, (3) that Borowski knew that the communication would be viewed as a threat, and (4) that Borowski made the communication with the intent of harassing or annoying another person. The government does not need to prove that Borowski truly intended to carry through with an act of physical violence against Assemblyman Traini.

*Conclusion*

The judgement of the district court is REVERSED, and this case is remanded to the district court for further proceedings on the criminal complaint.